[Crim. No. 396.   Fourth Appellate District.—March 20, 1940.]

THE PEOPLE, Respondent, v. PETE GAYTAN, Appellant.

P. E. Bingman for Appellant.

Earl Warren, Attorney-General, and Frank Richards, Deputy Attorney-General, for Respondent.

GRIFFIN, J.—Appellant was convicted of burglary in the second degree and appealed from the judgment and order denying his motion for a new trial. He contends that the trial court erred in failing to give his instructions on intoxication and intent, and that the verdict is contrary to law.

On the night of November 6, 1939, appellant and a young lady companion entered a cafe at 354–356 South Seventh Street in the city of Colton and sat in a booth where appellant dined and drank beer, remaining in the cafe until 1:15 o'clock the following morning. A bar adjoined the cafe, separated by a partition, and access thereto from the cafe was through a dividing door. In the rear of the building were rest rooms for men and women; also a room which had formerly been used as a dance hall but in which Mr. Noriega, the owner, maintained a cot. Back of the ladies' rest room there was a storage room where Mr. Noriega kept cartons of cigarettes, a phonograph and other paraphernalia. At about 9 o'clock on that night Mr. Noriega reclined on the cot but could not sleep, and while lying there saw appellant walk into the storage room and throw cartons of cigarettes out of the room through an opening between the top of the outside wall and the roof. Appellant, after throwing the cartons of cigarettes through this opening, left the storage room but returned in about 15 minutes and threw more cartons of cigarettes through the opening at the top of the wall. Mr. Noriega then arose from the cot and went around to the back of the building, looked over a fence, and saw a boy picking up the cartons of cigarettes. Mr. Noriega went around to a gate and through an alley, at which time he saw another boy who was watching and who started to run. Mr. Noriega gave chase but the boy was too fast and got away. He recognized the boys and identified them in court. One was Larry Garcia and the other was Tony Guitron. After giving up the chase, Mr. Noriega returned to the place where the cartons of cigarettes had been thrown from the storage room and recovered three or four of them from the ground. He entered the dining room but appellant was not there. Mr. Noriega then talked to a police officer about the affair. During the time appellant was sitting in the booth with his lady companion, Larry Garcia and Tony Guitron entered the cafe and held a conversation with appellant for about five minutes and then

the three of them walked toward the men's rest room, at which time appellant told Larry Garcia there were some cigarettes outside of the storage room and to get them and put them in the car. Upon returning to the front part of the premises Garcia and Guitron went outside and appellant went back to the booth. Later, Larry Garcia reentered the cafe and he and appellant again went back toward the men's rest room. In a few minutes they returned, Garcia going outside and appellant going to the booth. On the second meeting of the two, appellant gave the keys to his car, which was parked in front of the cafe, to Garcia. Garcia and Guitron moved the car to N Street, then went and picked up the cartons of cigarettes on the outside of the building and put them in the car. They drove around and met appellant and his lady companion at N and Seventh Streets, which was the same place they had previously parked the car. Appellant and the girl got into the car and Garcia and Guitron went for more cartons of cigarettes after appellant had talked to Garcia. Guitron returned to the car with the cigarettes and told appellant that Noriega was chasing Garcia. Guitron got in the car with appellant and his girl friend and they drove down the highway, stopping the car en route while Guitron hid the cigarettes. They returned to Seventh and F Streets where Guitron left them and went home. Garcia, after eluding Mr. Noriega, went home and was later aroused from bed by two police officers. At 1:30 o'clock in the afternoon of November 7th, appellant telephoned and asked Mr. Noreiga's wife what had happened "last night", and she asked him, "Well, what were you doing in the back room?" He said, "Well, I am willing to pay for the cigarettes that I took." She told him that she did not have anything to do with it and for him to come and talk to Milton. Appellant testified that he was "drunk" on this occasion, denied the commission of the act charged, but stated that he remembered all the conversation that took place. Other witnesses testified that he "didn't look drunk" and that he did not appear to be intoxicated.

Stripped of unnecessary *minutiae,* the facts related constitute the evidence presented.

Appellant requested the following instruction which was refused, and he contends that its refusal warrants the granting of a new trial: " . . . that voluntary intoxication

is not an excuse for a criminal act, but in any case in which criminal responsibility depends upon premeditation, or the formation of a specific intent, it is proper for the jury to consider whether the accused was so intoxicated that he was incapable of forming an intent and, therefore, whether he could have been guilty of the crime charged. The intent with which a building is entered being a necessary element of the crime of burglary, it is proper for the jury to take into consideration the fact that the accused was intoxicated at the time in determining the intent with which he committed the act; but such fact is to be considered by the jury for the sole purpose of determining whether the person accused was intoxicated to such an extent as to render him incapable of forming the specific criminal intent essential to constitute the crime.''

Appellant requested another instruction in the language of section 22 of the Penal Code on the same subject which was given. Where a trial judge properly covers the law on a subject in the instructions given to a jury, there is no error in refusing additional instructions requested by a defendant on the same subject. (*People* v. *Morales,* 26 Cal. App. (2d) 442, 444 [79 Pac. (2d) 771].) In addition to the above-mentioned instruction the court gave another instruction on this subject reading in part as follows: '' . . . Evidence of such intoxication may be considered by the jury for the purpose of determining the degree of the crime, and in determining the purpose, motive or intent with which he committed the act, . . . ''

Appellant contends that this last-mentioned instruction should not have been given because of the criticism enunciated in *People* v. *Phelan,* 93 Cal. 111, 113 [28 Pac. 855]). The objectionable portion of the instruction given in that case was ''evidence of drunkenness can only be considered by the jury for the purpose of determining the *degree of the crime,* . . . '' (Italics ours.) The court said that the instruction withdrew from the consideration of the jury evidence which the code says a jury may consider in determining the intent with which an act is committed. This criticism is not applicable to the instruction given in the instant case because it does not state that evidence of drunkenness can only be considered by the jury for the purpose of determining the

degree of the crime, but states that evidence of such intoxication may be considered by the jury for the purpose of determining the degree of the crime and in determining the purpose, motive or intent with which the act was committed.

■ Appellant further contends that the trial court erred in refusing to give another instruction requested by him to this effect: " . . . If a thief, therefore, should enter a store to buy food and clothes, and after entering changes his mind and concludes to steal and not to purchase his supplies, the offense would be mere larceny; but if it be proven that he entered with intent to steal, the law will not in the face of such proof, shield him from punishment as a burglar on the assumption that he has the consent and invitation of the proprietor to so enter."

Although the information describes the premises as a room in the cafe building, yet this instruction, if given, might have confused the jury relative to when the intent to steal the cartons of cigarettes must have existed in the mind of appellant, whether at the time he entered the cafe or at the time he entered the room. The trial court, after defining burglary in the language of the statute, gave to the jury the following instruction: "In this connection you are instructed that if you believe from the evidence beyond a reasonable doubt that the defendant . . . did . . . feloniously enter a room in the cafe building of Milton Noriega located at 356 South 7th Street in the City of Colton, California, with intent then and there to commit the crime of theft . . . then you must find the defendant . . . guilty . . . " This subject was fully and properly covered by the instruction that was given.

■ Appellant states that the verdict of the jury is contrary to law in this, that the "preponderance" of the testimony shows that he was so intoxicated at the time of his arrival at and departure from the premises alleged to have been burglarized as to have been incapable of forming any intent or motive for taking anything from said building or any portion thereof. In criminal cases the preponderance of the evidence is not the test. (*People* v. *Lamb,* 67 Cal. App. 263 [227 Pac. 969].) At most, the evidence presents merely a conflict as to whether appellant was intoxicated. Therefore, under the evidence submitted, it was for the jury to determine whether appellant's state of voluntary intoxication was

such as to render him incapable of forming the specific intent to commit larceny at the time he entered the storage room. The jury having determined the matter adversely to appellant, its finding is binding on the appellate court.

The evidence being sufficient to support the verdict and no error appearing either in the instructions given or in the refusal of the trial court to give the instructions requested by appellant, the appeal from the judgment and order denying the new trial is affirmed.

Barnard, P. J., and Marks, J., concurred.